UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANNA CIURLEO,

        Plaintiff,                                    Civil Action No. 16-CV-10566

vs.                                                 HON. MARK A. GOLDSMITH

ST. REGIS PARISH, et al.,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 10) AND DISMISSING PLAINTIFF'S REMAINING STATE-LAW CLAIM WITHOUT PREJUDICE**

This matter is before the Court on Defendants' motion for partial summary judgment (Dkt. 10). The issues have been fully briefed, and a hearing was held on September 8, 2016. Defendants seek a ruling that, as a matter of law, Plaintiff is barred from asserting federal and state employment law claims against Defendants because she falls within the First Amendment's ministerial exception, as set forth in Hosanna-Tabor Evangelical Lutheran Church & School v. E.E.O.C., 132 S. Ct. 694 (2012). For the reasons explained below, the Court grants Defendants' motion and dismisses the remaining state-law defamation claim without prejudice.

## I. BACKGROUND

Plaintiff began her employment with Defendants St. Regis Parish and St. Regis Elementary School and Academy (collectively, "St. Regis") in August 2006. Compl. ¶ 14 (Dkt. 1). Plaintiff was initially employed by St. Regis as a junior kindergarten teacher, but was eventually assigned to teach first grade prior to the 2012-2013 school year. Id. ¶ 15-16. Throughout Plaintiff's employment with St. Regis, she worked under a succession of yearly written employment contracts. Id. ¶ 17.

1

On June 12, 2014, Plaintiff and St. Regis entered into a written employment contract for the 2014-2015 school year. Id. ¶ 20. The contract stated that Plaintiff's duties consisted of teaching in St. Regis's facilities and performing other duties that assist St. Regis "in fulfilling its mission of providing a Catholic education for its students." Empl. Agreement, Ex. A to Def. Mot., at 1 (Dkt. 10-2). The contract also required Plaintiff "not to engage in, nor to endorse, publicly, any actions or beliefs contrary to the teaching and standards of the Roman Catholic faith and morality and conscientiously . . . provide a Catholic role model for all students." Id.

The job description for pre-kindergarten through first grade teachers provides more information regarding Plaintiff's former role with St. Regis. It states that the teachers aid "students in Christian formation by exemplifying Catholic living, both in and out of the classroom." Job Description, Ex. G to Def. Mot., at 2 (cm/ecf page) (Dkt. 10-8). It further explains that, in light of the fact that "Catholic schools educate their students to promote the kingdom of God, it is important that all teachers are role models for students, exemplifying Catholic teachings and values in their lives and in their actions." Id. In addition to teaching the assigned subjects and grading work, teachers are to lead daily prayer, participate in school liturgies, and plan all-school liturgies as requested. Id.

Under the section entitled "Job Qualifications," the description states that the teacher must be a practicing Catholic, possess a current teaching certification issued by the State of Michigan, a Bachelor's degree in education, and an early childhood endorsement for pre-kindergarten. Id. Teachers are also required to adhere to the Code of Ethical Conduct and complete background checks and safe-environment training prior to employment. Id. While the job description does not contain a requirement for prior religious training, the evaluation form for teachers at St. Regis contains a section regarding whether the teacher had completed her Catechist certification, and, if

not, whether the teacher is working towards receiving her certification. Teacher Action Plan and Appraisal for Professional Growth, Ex. H to Def. Mot., at 1 (Dkt. 10-9). In addition, the bottom of a document entitled "2011-2012 Recommended Lay Teacher's Salary Scale" states that "[a]ll Principals & teachers employed in Catholic Schools should be certified Catechists within 12 months form [sic] date of hire. If certification is obtained within 12 months from date of hire a one time bonus of $500 will be paid out." Salary Schedule, Ex. 2 to Pl. Resp., at 2 (cm/ecf page) (Dkt. 14-3).

In practice, Plaintiff described her religious duties at St. Regis as being minimal. Plaintiff stated that she was required to lead a morning prayer and to teach religion for 20 to 30 minutes per day. Pl. Resp. at 23. Plaintiff stated that first grade teachers were also required to escort their students to a weekly school Mass and to supervise the students during the Mass. Id. at 23-24.

At the end of the 2014-2015 school year, Defendant Denise Ball, the principal at St. Regis, informed Plaintiff that her employment with St. Regis was being terminated. Compl. ¶¶ 21, 23. Ball told Plaintiff that she had decided to end Plaintiff's employment because St. Regis was moving in a "new direction." Id. ¶ 24. At the time of her termination, Plaintiff was 53 years old. Id. ¶ 22. Plaintiff alleges that she was subsequently replaced with a "significantly younger employee." Id. ¶ 25.

She filed the instant action asserting claims for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, et seq. and the Elliot Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, et seq.

## II. STANDARD OF REVIEW

A court must grant "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "In making this determination, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." U.S. S.E.C. v. Sierra Brokerage Servs., Inc., 712 F.3d 321, 327 (6th Cir. 2013). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). In considering the material facts in the record, the court must recognize that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 422. Furthermore, plaintiff "cannot rely on conjecture or conclusory accusations." Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008).

### III. ANALYSIS

Defendants argue that Plaintiff's claims under the ADEA and the ELCRA are barred by the First Amendment's ministerial exception to employment law claims brought by ministerial employees against religious organizations. Def. Mot. at 2. It is undisputed that, if Plaintiff qualifies as a minister, her employment law claims must fail.

In Hosanna-Tabor, the Supreme Court considered whether the "freedom of a religious organization to select its ministers is implicated by a suit alleging discrimination in employment." Hosanna-Tabor, 132 S. Ct. at 705. The Court ultimately concluded that "there is a ministerial exception" to employment law claims "grounded in the Religion Clauses of the First Amendment" and held that the exception "is not limited to the head of a religious congregation." Id. at 707. The Court declined "to adopt a rigid formula for deciding when an employee qualifies as a minister." Id. Instead, the Court considered the following four factors in determining whether an employee qualifies as a minister: (i) the formal title given to the employee by the organization, (ii) the

4

substance reflected in that title, (iii) the employee's own use of that title, and (iv) the important religious functions the employee performed. Id. at 708. "[W]hether the exception attaches at all is a pure question of law which this court must determine for itself." Conlon v. InterVarsity Christian Fellowship, 777 F.3d 829, 833 (6th Cir. 2015).

In Conlon, the Sixth Circuit held that before determining whether an employee falls within the ministerial exception, a court must determine whether the employer is a "religious group" capable of asserting the exception. Id. at 833. In this case, Plaintiff does not dispute that St. Regis is a "religious group" capable of asserting the exception. Therefore, this Court need only consider whether the ministerial exception applies to Plaintiff.

The first factor to consider is the formal title that Plaintiff held with St. Regis, which requires determining "whether the wording of the title conveys a religious — as opposed to secular — meaning." Id. at 834-835. The contract between Plaintiff and St. Regis was entitled "Teacher Employment Agreement." Teacher Employment Agreement at 1. The job description for Plaintiff's position described it as an "Early Childhood Teacher." Job Description at 2 (cm/ecf page). This title does not connote any religious meaning. Unlike the title of the plaintiffs in Hosanna-Tabor and Conlon, Plaintiff's title does not include the words "minister" or "spiritual." Because Plaintiff was only identified as an "Early Childhood Teacher," this factor weighs against application of the ministerial exception.

The second factor to consider is the substance reflected in Plaintiff's title. In considering this factor, the Supreme Court noted the formal religious training necessary for the plaintiff's job as a minister. Hosanna-Tabor, 132 S. Ct. at 707. The plaintiff in that case was required to complete eight college-level courses in theology, "obtain the endorsement of her local Synod district," and

5

pass an oral examination at a Lutheran college in order to qualify for her position as a minister. Id.

St. Regis argues that this factor weighs in favor of applying the ministerial exception, because Plaintiff was a certified Catechist at the time she was hired. In order to be certified as a Catechist, an individual is required to attend "catechist formation sessions," which discuss "twenty-seven foundational topics" including "Meeting Jesus," "Foundations of Sacred Scripture," and evangelization, among others. Catechist Formation Handbook, Ex. F to Def. Mot., at 8, 12 (cm/ecf page) (Dkt. 10-7). An internship must also be completed prior to receiving certification as a Catechist. Id. at 9. Furthermore, St. Regis noted that Plaintiff became an Advanced Catechist in December 2013. See Advanced Catechist Certification, Ex. C to Def. Mot., at 4 (cm/ecf page) (Dkt. 10-4).

In response, Plaintiff argues that the requirements to become a Catechist do not compare to the "rigorous requirements" that the plaintiff in Hosanna-Tabor had to meet in order to become a minister. Conlon, 777 F.3d at 835. The decision in Fratello v. Roman Catholic Archdiocese of New York, No. 12-CV-7359 (CS), 2016 WL 1249609, at *11 (S.D.N.Y. Mar. 29, 2016) supports Plaintiff's contention. When considering the education and training required for the plaintiff's position as school principal, the court noted that, "while principals must attest to their Catholic faith and it is at least suggested that they complete Catechist certification, nothing in the record suggests the rigorous level of education, training, and certification attained by plaintiffs such as [the plaintiff in Hosanna-Tabor] or other 'called' teachers." Id. Like the plaintiff in Fratello, Plaintiff in our case only needed to attest to her Catholic faith and was not required to attain the same level of training that the plaintiff in Hosanna-Tabor received in order to become a minister.

6

Furthermore, it appears that becoming a certified Catechist was not a condition of Plaintiff's employment as a teacher. While Plaintiff's job description required her to possess a current teaching certification and a Bachelor's degree in education, there was no requirement that she become a Catechist. Job Description at 3 (cm/ecf page). At oral argument, counsel for Defendants argued that the salary scale provided for the 2011-2012 school year contained a requirement that all teachers become Catechists within 12 months of employment. This is not accurate. The salary scale states that "[a]ll Principals & teachers employed in Catholic Schools should be certified Catechists within 12 months" of their hire. Salary Schedule at 2 (cm/ecf page) (emphasis added). There is no statement that teachers "shall" or "must" become certified Catechists in order to continue their employment with St. Regis. The salary scale also states that if Catechist certification is obtained within 12 months of hire, "a one time bonus of $500 will be paid out." Id. This monetary incentive suggests that becoming a Catechist within 12 months of hire was encouraged, but not required by St. Regis. Id. Therefore, this factor also weighs against application of the ministerial exception.

The next factor to consider is Plaintiff's use of her title. In Hosanna-Tabor, the Supreme Court pointed to facts showing that the plaintiff had held herself out as a minister by claiming a church housing allowance reserved for those acting "in the exercise of the ministry," and by acknowledging in writing that God had led her "to serve in the teaching ministry." Hosanna-Tabor, 132 S. Ct. at 708. Here, Plaintiff did not engage in any similar activity in which she specifically held herself out as a minister, except to the extent that her job duties – discussed immediately below – implicitly suggest that. This factor does not weigh in favor of applying the exception.

7

The final factor to consider is the important religious functions that Plaintiff performed for St. Regis.  By Plaintiff's own admission, she spent 20 to 30 minutes per day teaching religion; led a daily morning prayer; and supervised the children during weekly Mass.  Pl. Resp. at 23-24; Decl. of Dianna Ciurleo, Ex. 1 to Pl. Resp., ¶ 18 (Dkt. 14-2).  Plaintiff's devotion of time to religious activities is similar to that of the plaintiff in Hosanna-Tabor – some 45 minutes per day – which the Court held weighed in favor of applying the ministerial exception.  Hosanna-Tabor, 132 S. Ct. at 708.  The same is true here.

In Conlon, the Sixth Circuit noted that the Supreme Court in Hosanna-Tabor "expressly declined to rule upon whether the exception would apply in the absence of one more of those factors."  Conlon, 777 F.3d at 835.  The court in Conlon held that the presence of two of the factors – formal title and religious function – was sufficient for the ministerial exception to apply.  Id.  It also expressly stated that it need not decide whether religious function standing alone was sufficient to trigger the ministerial exception.  Id.

The instant case presents that question, and this Court concludes that religious function alone can trigger the exception in appropriate circumstances.  This conclusion flows from a core value of the Free Exercise Clause, which is to "protect a religious group's right to shape its own faith and mission through its appointments."  Hosanna-Tabor, 132 S. Ct. at 706.  Unless courts recognize the centrality of this factor to trigger the application of the ministerial exception, no church, synagogue, mosque, or other religious community would be truly "free to choose those who will guide it on its way."  Id. at 710.

Justice Alito recognized this guiding principle in his concurrence in Hosanna-Tabor (in which Justice Kagan concurred).  He stated that the ministerial exception "should apply to any 'employee' who leads a religious organization, conducts worship services . . . or serves as a

8

messenger or teacher of its faith." Hosanna-Tabor, 132 S. Ct. at 712 (Alito, J., concurring). He explained that our nation is home to virtually every religion in the world, some of which do not utilize formal ordination for their religious leaders, or even use the term "minister." Id. at 711. He urged operationalizing the exception by applying it to any employee who "played an important role as an instrument of her church's religious message and as a leader of its worship activities." Id. at 715. The Sixth Circuit in Conlon interpreted this statement as "essentially a restatement of the fourth factor," i.e., the important religious function factor. Conlon, 777 F.3d at 835.

While this Court has considered all the factors identified in the Hosanna-Tabor majority opinion, it concludes that the paramount factor of religious function, highlighted in Justice Alito's opinion, provides the decisional pathway here. Plaintiff was unquestionably engaged in two important religious functions on a daily basis: religious teaching for 20 to 30 minutes and leading the morning prayers. These activities are the hallmark of religious exercises through which religious communities transmit their received wisdom and heritage to the next generation of believers. The First Amendment provides a shield to the church and her officials against a secular government's incursion by way of its employment-law litigation process, which may undermine the freedom to appoint those entrusted with such matters of faith. Therefore, Plaintiff's claims under the ADEA and the ELCRA are barred by the First Amendment's ministerial exception.

As for Plaintiff's remaining state-law defamation claim, the Supreme Court has held that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity . . . to decide whether to exercise jurisdiction over a case . . . involving pendent state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early

stages and only state-law claims remain, the federal court should decline." Id.  The Sixth Circuit has held that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."  Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254 (6th Cir. 1996). "Only overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial." Id.  In light of the fact that the parties have yet to even begin discovery, "the values of judicial economy, convenience, fairness, and comity" dictate that this Court decline to retain supplemental jurisdiction over Plaintiff's state-law defamation claim.

## IV.  CONCLUSION

For the reasons stated above, the Court grants Defendants' motion for partial summary judgment regarding Plaintiff's ADEA and ELCRA claims (Dkt. 10).  The Court also declines to retain supplemental jurisdiction over Plaintiff's remaining state-law defamation claim and dismisses it without prejudice.

SO ORDERED.

Dated:  October 7, 2016          s/Mark A. Goldsmith
     Detroit, Michigan           MARK A. GOLDSMITH
                                        United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 7, 2016.

                                          s/Karri Sandusky
                                          Case Manager